**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  Criminal No. 23-195 |
| MICHAEL APPLETON, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

## I.    <u>INTRODUCTION</u>

Presently before the Court is Defendant Michael Appleton's Motion to Suppress Evidence ("Motion to Suppress"), (Docket No. 49), in which he seeks to suppress the physical evidence obtained from the warrantless search of a vehicle he was renting.  The Government opposes Defendant's motion and has filed a Response to Pretrial Motions, (Docket No. 52), and Defendant has filed a Reply in Support of Motion to Suppress Evidence, (Docket No. 53).  Defendant's Motion to Suppress was the subject of a suppression hearing held by the Court on February 17, 2026, the official transcript of which was filed on March 18, 2026.  (Docket Nos. 67, 69).  At the Court's direction, the parties submitted post-hearing proposed findings of fact and conclusions of law relative to Defendant's motion.  (Docket Nos. 70, 71).  The Government subsequently filed a response to Defendant's proposed findings of fact and conclusions of law, (Docket No. 72), but Defendant did not file a response by the established deadline of May 20, 2026.  (Docket No. 68). The Court then took the matter under advisement.

After careful consideration of the parties' submissions, the transcript of the suppression hearing, and the credible evidence of record, and for the following reasons, Defendant's motion will be denied.

## II.     BACKGROUND

### A.  Procedural History

On September 12, 2023, Defendant was charged in a one-count Indictment in this case with possession with intent to distribute 40 grams or more of fentanyl and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 841(b)(1)(C) (Count One).  (Docket No. 3).  The conduct underlying that count is alleged to have occurred on or about May 19, 2023.  (*See id.*).  Defendant subsequently was arraigned and pled not guilty to the charges.  (Docket Nos. 13, 14).

Following Defendant's arraignment, he requested and was granted a number of extensions of time to file pretrial motions.  Ultimately, Defendant filed the above-referenced motion, which is opposed by the Government.  (Docket Nos. 49, 52, 53).  As stated, Defendant's Motion to Suppress was the subject of a suppression hearing held by the Court, and supplemental briefing on that issue is complete.  This matter is therefore now ripe for disposition.

### B.  Facts

At issue here is whether evidence obtained following a search of a vehicle that was rented by Defendant should be suppressed, as Defendant advocates.  At the suppression hearing, the Government called Federal Bureau of Investigation Task Force Officer Scott Patterson ("TFO Patterson"), who testified concerning the events bearing on the matters at issue and who was subject to cross-examination concerning same.  (Docket Nos. 67, 69).

It is well-settled that, at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge."  *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (internal quotation marks and citation

omitted).  Thus, the Court, "as finder of fact, is free to accept or reject any or all of a witness's testimony." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citation omitted).

In this Court's estimation, based on the demeanor and testimony of TFO Patterson in response to the questioning of the attorneys at the suppression hearing, TFO Patterson offered credible testimony concerning the events that unfolded on and around the date in question, despite the defense's efforts to impeach him.  *See United States v. Garcia*, 521 F. App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (noting that the factfinder's choice between two permissible views cannot be clearly erroneous "'[w]hen findings are based on determinations regarding the credibility of witnesses . . . for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said'")).  Additionally, TFO Patterson presented as an experienced law enforcement officer, given that he is employed by the Pennsylvania Office of the Attorney General, has been involved in law enforcement for approximately sixteen years, and has been attached to the Federal Bureau of Investigation ("FBI") for five years.  (Docket No. 69 at 6-7).

Turning to the events at issue here, during the time period of April through May of 2023, TFO Patterson was working as a case agent on an FBI drug trafficking investigation involving an individual named Kamil Wheeler ("Wheeler").  (Docket No. 69 at 7).  The investigation was assisted by a known confidential informant (the "confidential informant") who had known Wheeler for about ten years, and who was considered to be credible based on the confidential informant's three years of assisting law enforcement.  (*Id.* at 7-8, 27).  The confidential informant indicated that Wheeler was a drug trafficker whose source of supply was from Detroit, Michigan.  (*Id.* at 8).  A residence located at 525 Wallis Avenue, in Farrell, Pennsylvania, ("525 Wallis" or the "residence") was identified as one of the locations at which Wheeler stayed and which he used

for his drug trafficking in that area.  (*Id.* at 8-9).

On May 18, 2023, TFO Patterson was conducting surveillance in the area of Wallis Avenue when he observed, across the street from 525 Wallis, a parked Nissan Rogue (the "Nissan" or the "vehicle") and Defendant standing outside the vehicle's driver's side door.  (Docket No. 69 at 10). TFO Patterson obtained the registration from the vehicle and proceeded to "run the information for it."  (*Id.*).  The search results showed that the vehicle belonged to Enterprise Rental or EAN Holdings, and further investigation revealed that Defendant was the renter of the vehicle.  (*Id.*). TFO Patterson  contacted the confidential informant, who was in the area of 525 Wallis at the time. (*Id.* at 11-12).  The confidential informant identified Defendant as "Mike" who "was the plug from Detroit," and who "had brought drugs with him from Detroit."  (*Id.* at 11-12, 15).   All of this information, beginning with TFO Patterson's observation of the parked Nissan, was obtained that same day, May 18, 2023.  (*Id.* at 10-12, 15).

About 9:00 the next morning, May 19, 2023, the FBI, including TFO Patterson, served a federal search warrant at 525 Wallis.  (Docket Nos. 52-1 at 1; 69 at 9, 15).  At that time, four individuals were found to be present inside the two-bedroom, two-story residence:  the residence's owner and her romantic partner (who were both upstairs in the master bedroom), Wheeler (who was asleep on the couch downstairs), and Defendant (who appeared to have been staying in the spare bedroom upstairs).  (Docket No. 69 at 9, 15, 18-20).  In searching the residence, the agents found, underneath the bed in the spare bedroom, a safe that contained over $12,000 and approximately one ounce of a substance suspected and later confirmed to be crack cocaine.  (*Id.* at 20).  In that same spare bedroom, along with a bed and stacks of clothes, officers found items – including a watch, hat, wallet, and cell phone – indicating that Defendant appeared to have been staying in that room.  (*Id.*).

At the time the search warrant for the residence was executed, the Nissan was again parked directly across the street from 525 Wallis.  (Docket No. 69 at 15-16).  Knowing that the vehicle was rented by Defendant, the agents asked Defendant if he had the vehicle's keys and whether he would consent to a search of the vehicle.  (*Id.* at 16, 32).  In response to the agents' requests, Defendant told the agents not only that the Nissan "was not his vehicle," but also that "he didn't know anything about the vehicle on multiple occasions."  (*Id.* at 16, 17).  The agents also advised Defendant, "we know that it's rented in your name," but Defendant "still indicated that he didn't know anything about the vehicle."  (*Id.* at 16).  Upon redirect examination regarding the specific statements Defendant made regarding the Nissan, TFO Patterson confirmed that Defendant "literally said, 'I don't know anything about that car.'"  (*Id.* at 35).

Defendant did not provide agents with keys to the Nissan, nor were the vehicle's keys located in the residence (which TFO Patterson described as being very cluttered).  (Docket No. 69 at 16-17, 19).  Next, the agents attempted to have Enterprise remotely unlock the vehicle via satellite, but the company was unable to do so.  (*Id.* at 17).  Therefore, to gain access to the Nissan, the agents shattered the passenger window in order to search the vehicle.  (*Id.*).  The Search Warrant Execution Report (attached to both Defendant's Motion to Suppress and the Government's response thereto) indicates that, inside the Nissan, the agents found a quantity of suspected fentanyl, which was confirmed by subsequent testing.  (Docket Nos. 49-1 at 3-4; 52-1 at 3-4).

## III.     DISCUSSION OF DEFENDANT'S MOTION TO SUPPRESS

In his Motion to Suppress, Defendant notes that "as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver."  *Terrence Byrd v. United*

*States*, 584 U.S. 395, 398-99 (2018). (Docket Nos. 49 at 3). Defendant contends that, as the only person listed on the Nissan's rental agreement as an authorized driver, he lawfully possessed the vehicle on the day it was searched, he had a reasonable expectation of privacy in it, and he has standing to challenge the warrantless search. (*Id.*). Specifically, Defendant argues that the agents did not have probable cause to justify the search of the vehicle. (*Id.* at 3-4). Consequently, in his motion, Defendant seeks to exclude as evidence at trial the fentanyl that agents seized during the vehicle search. (*Id.* at 1, 5).

In response, the Government contends that Defendant's Motion to Suppress should be denied because, when Defendant disclaimed any ownership interest in or knowledge of the Nissan, he "abandoned" the vehicle and forfeited any reasonable expectation of privacy he had in it. (Docket No. 52 at 2-5). Additionally, the Government argues that, even if Defendant did not abandon any reasonable expectation of privacy that he had in the Nissan, the agents had probable cause to search the vehicle, so the warrantless search of the vehicle was lawful pursuant to the automobile exception to the warrant requirement. (*Id.* at 5-9).

For the reasons that follow, the Court finds that suppression of the evidence recovered from the Nissan is not required because no Fourth Amendment violation occurred here.

### A. <u>Legal Standard – Fourth Amendment</u>

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. *See* U.S. CONST. amend. IV. "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). In seeking the suppression of evidence, a defendant has the burden of establishing that his Fourth Amendment rights were violated. *See United States v. Acosta*, 965 F.2d 1248, 1256 n.9

(3d Cir. 1992).  "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable."  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted).  The applicable burden of proof under these circumstances is preponderance of the evidence.  *See United States v. Mastronardo*, 987 F. Supp. 2d 569, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974)).

In this case, it is undisputed that the search of the Nissan, which was rented by Defendant at the time, was conducted without a warrant.  Because Defendant argues that the search at issue violated his Fourth Amendment rights, it is the Government's burden to show, by a preponderance of the evidence, that such search was reasonable.  For the reasons that follow, the Court finds that the Government has sustained its burden here.

### B. <u>Abandonment of the Expectation of Privacy in the Vehicle</u>

First, in opposing Defendant's Motion to Suppress, the Government argues that Defendant abandoned his expectation of privacy in the Nissan, so there was no violation of his Fourth Amendment rights when the agents searched the vehicle.  Determining whether abandonment has occurred for Fourth Amendment purposes differs from evaluating whether abandonment has taken place under property law, in that an analysis of Fourth Amendment abandonment "examines the individual's reasonable expectation of privacy, not his property interest in the item."  *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004).  Accordingly, when a defendant abandons an item under the Fourth Amendment, he "effectively waiv[es] his right to bar its search" because abandonment of an item forfeits a defendant's reasonable expectation of privacy in that item.  *Id.* at 354-55.  Courts determine from an objective point of view whether property has been abandoned, and proof of intent to abandon property must be established by clear and unequivocal

evidence.  *See id.* at 354.

Importantly, a defendant may subjectively intend to retain his property rights in an item, yet he still may abandon his reasonable expectation of privacy in that property by denying any connection to it.  *See, e.g., United States v. Small*, No. 22-1469, 2023 WL 4399212, at *3 (3d Cir. July 7, 2023) (although defendant arguably demonstrated a subjective expectation of privacy by attempting to hide a backpack under his seat, any subjective expectation was rendered objectively unreasonable when he explicitly disclaimed ownership by stating "this is not my backpack"); *United States v. Curran*, 638 F. App'x 149, 153-54 (3d Cir. 2016) (where defendant threw his bags over a fence into a public area and planned to retrieve them, although his actions did not demonstrate an intent to abandon the bags, such actions did clearly and unequivocally demonstrate an abandonment of his reasonable expectation of privacy, so officers' search of the bags was lawful).  "In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish abandonment."  *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012). Additionally, a defendant's denial of any connection to an item may abandon his interest in it even if officers, to whom the denial was made, are subjectively aware that the defendant is being dishonest in his denial.  *See, e.g., Fulani*, 368 F.3d at 355 (disagreeing with the district court and finding that, despite the defendant's nametag being on unclaimed luggage, officers could still infer that the luggage was abandoned when the defendant repeatedly refused to claim the luggage after cooperating with the officers at least in part).

In this case, TFO Patterson testified that on the day in question, after searching the residence and not finding the Nissan's keys, the agents asked Defendant if he had the keys to the Nissan and if he would consent to a search of the vehicle, and Defendant said that he didn't know anything about the vehicle, and that it was not his vehicle.  (Docket No. 69 at 16, 17, 32).  TFO

Patterson also testified that Defendant indicated, on multiple occasions that day, that he did not know anything about the vehicle.[1]  (*Id.* at 16, 17, 35).  Moreover, even after the agents informed Defendant, "we know that it's rented in your name," Defendant "still indicated that he didn't know anything about the vehicle."  (*Id.* at 16).  Additionally, in response to the agents' request for the keys to the Nissan, Defendant did not supply the agents with keys, and the window of the vehicle was broken in order to gain entry and conduct a search.

Notably, in making these statements to the agents regarding the Nissan, Defendant did not solely deny ownership of the vehicle; he also repeatedly denied any knowledge of, or association with, the vehicle.  In his brief, Defendant cites to several cases ostensibly in support of his argument that he did not abandon the vehicle in making his statements to the agents.  However, the cases cited by Defendant do not undercut the Government's position.  At most, the cases cited by Defendant stand for the proposition that mere disavowal of ownership, without more, does not constitute Fourth Amendment abandonment.  *See, e.g., United States v. Lindsey*, 691 F. Supp. 3d 1370 (M.D. Fla. 2023) (involving whether the defendant intended to abandon his rights to possess a rental car and exclude others when he told police that he did not own the car); *United States v. Lopez-Cruz*, 730 F.3d 803, 809 (9th Cir. 2013) (explaining that none of the court's abandonment cases "has held that mere disavowal of ownership, without, more, constitutes abandonment of a person's reasonable expectation of privacy in that property"); *United States v. Hawkins*, 681 F.2d 1343, 1346 (11th Cir. 1982) (stating that "a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim.").

---

[1]    Similarly, the Search Warrant Execution Report, authored by FBI Special Agents Melissa J. Zundel and Ryan Chrobak, states that "APPLETON denied any association with, or knowledge of the Nissan Rogue," and that "APPLETON denied any knowledge of or association with the Nissan Rogue."  (Docket Nos. 49-1 at 3; 52-1 at 3).

Here, however, Defendant did much more than simply disavow ownership of the Nissan; he repeatedly denied any knowledge of the vehicle whatsoever.  Moreover, two cases cited in *Lindsey* (as examples of instances where a non-owner driver of a vehicle *was found* to have abandoned a Fourth Amendment interest in a car) actually support the conclusion that Defendant here abandoned any privacy interest he had in the Nissan, since those cases found abandonment where a defendant denied knowledge of, or association with, a vehicle or its key.  *See, e.g., United States v. Hastamorir*, 881 F.2d 1551, 1553, 1559-60 (11th Cir. 1989) (finding that defendant abandoned his Fourth Amendment interest in a vehicle when he "denied any knowledge of" it); *United States v. Lawson*, No. 21-13272, 2022 WL 15180299 (11th Cir. Oct. 27, 2022) (finding that defendant abandoned any Fourth Amendment interest in a vehicle when he denied any association with the vehicle's key and denied knowledge of who owned the key).

Accordingly, the Court finds that, from an objective point of view, Defendant abandoned any reasonable expectation of privacy he previously had in the Nissan when he made his statements denying any association with or knowledge of the vehicle to the agents under the circumstances presented here, and that Defendant's intent to abandon the vehicle in this regard has been shown by clear and unequivocal evidence.  Because Defendant abandoned his privacy interest in the Nissan, the agents' search of the vehicle did not violate Defendant's Fourth Amendment rights. The Government has met its burden here, and Defendant's Motion to Suppress should therefore be denied.

### C.  <u>The Automobile Exception to the Warrant Requirement</u>

The preceding discussion conclusively establishes that suppression is not warranted here. Nevertheless, the Government offers, in the alternative, an additional argument that further shows that Defendant's Motion to Suppress should be denied.  Specifically, the Government also argues

that, at the time of the search of the Nissan, the agents had probable cause to believe that the vehicle contained contraband, and thus they had legal justification to conduct a warrantless search pursuant to the automobile exception to the warrant requirement. Defendant, for his part, contends that the automobile exception is inapplicable here because, at the time of the search of the Nissan, the agents did not have probable cause to believe that the vehicle contained contraband. Defendant, however, is incorrect.

The automobile exception to the warrant requirement permits law enforcement officers to seize and search a vehicle without a warrant if "a car is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Although the seizure or search of property without a warrant generally requires a showing of both probable cause and exigent circumstances, the "ready mobility" of automobiles is a factor that has led to permitting the search of vehicles based on probable cause without the existence of exigent circumstances. *See Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *Labron*, 518 U.S. at 940; *see also California v. Carney*, 471 U.S. 386, 390-91 (1985) (discussing the history of the automobile exception, the "long-recognized distinction between stationary structures and vehicles," and the characteristic ready mobility of vehicles as one of the exception's principal bases, along with the lesser expectation of privacy). In *Dyson*, the United States Supreme Court reversed the state appellate court's ruling that a warrantless search of a vehicle was illegal because there was no exigency precluding the police from obtaining a warrant that required a warrantless search, despite there being "abundant probable cause" that the vehicle contained contraband. 527 U.S. at 466-67. In so holding, the Supreme Court stated that "under our established precedent, the 'automobile exception' has no separate exigency requirement," and the finding of probable cause that the car contained contraband "alone satisfies the automobile exception to the Fourth

11

Amendment's warrant requirement." *Id.* The Supreme Court noted that, in *United States v. Ross*, 456 U.S. 798 (1982), it had previously stated that "in cases where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*.'" *Id.* at 467 (quoting *Ross*, 456 U.S. at 809 (emphasis added in *Dyson*)).

In considering whether probable cause existed here to justify a warrantless search, the Court notes that, in making such a determination, it must consider the totality of the circumstances and decide whether, in light of the facts, there was "a fair probability that contraband or evidence of a crime" would be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The probable cause inquiry is "commonsense, practical, and nontechnical; it is based on the totality of the circumstances and is judged by the standard of reasonable and prudent men." *United States v. Donahue*, 764 F.3d 293, 301 (3d Cir. 2014) (internal quotation marks and citations omitted). "'[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide' the fruits of his crime." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (additional internal quotation marks and citation omitted)). Thus, a "court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *Id.* (quoting *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)). Also, courts may give "'considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found,'" when assessing whether there is probable cause to justify a search. *Whitner*, 219 F.3d at 296 (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)).

Here, the Court agrees with the Government that, at the time the Nissan was searched without a warrant, the agents had probable cause to believe that the vehicle contained contraband or evidence of a crime. Specifically, the agents knew the following information at that juncture: (1) a search of the residence uncovered items indicating that Defendant had been occupying the residence's upstairs spare bedroom; (2) the items found in the spare bedroom included a watch, hat, cell phone, and wallet, as well as a portable safe with cocaine and over $12,000 cash inside; (3) in response to the agents' questions, Defendant had just falsely, conspicuously, and repeatedly denied any association with, or knowledge of, the Nissan that was parked in front of the residence, when the agents knew that the vehicle was rented in Defendant's name; and (4) even after the agents informed Defendant that they knew the vehicle was rented in his name, Defendant still maintained that he did not know anything about the vehicle. Additionally, the previous day, the confidential informant had identified Defendant as "Mike," who "was the plug from Detroit," and who "had brought drugs with him from Detroit." (Docket No. 69 at 11-12 , 15). Based on this information, and in light of the agents' training and experience, the Court finds that it would have been reasonable for the agents to conclude that contraband or evidence of a crime would be found in the vehicle, rented by Defendant, that was parked outside of the residence. *See, e.g., United States v. Ostrum*, 99 F.4th 999, 1006 (7th Cir. 2024) (upholding a warrantless search of a rental car and noting that "to the extent [the defendant] complains that it was insufficient for officers to rely on their knowledge that drug traffickers frequently store their contraband in vehicles, we have long held that law enforcement experience is one of the many factors that can contribute to probable cause" (internal quotation marks and citation omitted)).

While Defendant argues, additionally, that the Government has waived any of its probable cause arguments relating to information received from the confidential informant, the Court

disagrees. Defendant contends that, because the Government did not specifically indicate, until the suppression hearing, that the agents had relied in part on information received from a confidential informant, the Court need not consider such information in ruling on the suppression motion. (Docket No. 71 at 7-9). In support of this argument, Defendant cites to a single case, *United States v. Gourley*, No. CR-06-6011, 2006 WL 2585027 (E.D. Wash. Sept. 7, 2006), in which the United States District Court for the Eastern District of Washington declined to consider a government argument, regarding a vehicle search, that was raised for the first time at a suppression hearing. In *Gourley*, however, the district court noted that the government's argument (that no search of a vehicle actually occurred because the car had been administratively seized) seemed disingenuous since the fact that two searches of the car had been conducted was so obvious that it was incredulous to argue otherwise, such theory was never briefed by the government and was only presented at the hearing, and the government did not show good cause for not having raised the argument sooner. *See id.* at *3-4. The circumstances in *Gourley*, however, are quite different from the situation presented in this case.

Here, Defendant himself first argued in his Motion to Suppress that the agents did not have probable cause to search the Nissan. (Docket No. 49). In response, the Government clearly raised, in its opposition brief, its own argument that the agents *did* have probable cause in support of its contention that the automobile exception to the warrant requirement applies here. (Docket No. 52 at 5-9 (extensively discussing probable cause and the automobile exception)). In making such argument, after setting forth the facts known by the agents at the time of the search (including a list of items found in the residence's spare bedroom and Defendant's false and conspicuous denial of any knowledge of the Nissan), the Government further stated in its brief as follows:

> The agents were justified in evaluating the known facts detailed in the preceding

14

paragraphs in light of the information they possessed from the preceding investigation. That information led to the search of 525 Wallis Avenue. That information included that [Defendant] was the likely Detroit source of supply for the drug dealing that was occurring at 525 Wallis Avenue.

(Docket No. 52 at 8).

At the suppression hearing that followed the parties' briefing on Defendant's motion, TFO Patterson testified that certain information agents learned in the course of the investigation had been supplied by a confidential informant (*e.g.*, as it relates to the Government's brief above, that the confidential informant identified Defendant as "Mike," who "was the plug from Detroit," and who "had brought drugs with him from Detroit"). (Docket No. 69 at 11-12, 15). Such testimony by TFO Patterson was offered as evidence to support the Government's argument that the agents had probable cause to believe that the Nissan contained contraband, so the automobile exception applied here – an argument that was not new as it had been previously raised in its opposition brief. The Court notes also that the Government's probable cause/automobile exception argument was properly raised, and evidence was properly offered in support of such argument, during the pendency of Defendant's Motion to Suppress. *Cf. United States v. Wynn*, Crim. Action No. 24-274, 2025 WL 3080711, at *3 (E.D. Pa. Nov. 4, 2025) (stating that the government had not raised an argument by the clear deadline for suppression litigation, neither in its opposition to the motion to suppress nor at the evidentiary hearing, and had shown no good cause for its omission); *United States v. Perminter*, Crim. No. 10-204, 2012 WL 642530, at *6 (W.D. Pa. Feb. 28, 2012) (finding that the government had waived an argument, and that there was no good cause shown for the failure to raise it, where such argument was not raised during the pendency of the suppression motion, neither in the brief in opposition to the motion to suppress, nor at the motion hearing, nor in later-submitted proposed findings of fact and conclusions of law, nor in response to defendant's

proposed findings of fact and conclusions of law).

Furthermore, when defense counsel, citing *Gourley*, argued at the suppression hearing that the Government had waived its ability to present evidence related to the confidential informant, by not revealing sooner that a confidential informant had been used in the investigation, the Court overruled the objection and found that such evidence was relevant to the question of probable cause. (Docket No. 69 at 12-15). Nevertheless, the Court indicated that the parties would be provided with an opportunity to present further argument on that issue in post-hearing briefs. (*Id.* at 14-15). Accordingly, in Defendant's Proposed Findings of Fact and Conclusions of Law submitted after the suppression hearing, Defendant reiterated the argument that the Government had waived any probable cause arguments relating to information received from the confidential informant. (Docket No. 71 at 7-9). Defendant stated once more that the Government did not reveal its use of a confidential informant in the investigation prior to the suppression hearing and, citing once again to *Gourley*, Defendant contended that the Government's response to the Motion to Suppress contained only one piece of information concerning the prior investigation (that the government had received information from Enterprise indicating that Defendant recently rented the Nissan). (*Id.* at 8).

However, Defendant's assertion in this regard is incorrect. As the Court noted, *supra*, the Government stated in its brief in response to Plaintiff's Motion to Suppress that "[t]he agents were justified in evaluating the known facts" (*i.e.*, the items found in the residence's spare bedroom and Defendant's false and conspicuous denial of any knowledge of the Nissan) "in light of the information they possessed from the preceding investigation." (Docket No. 52 at 8). The Government further indicated in its response that "[t]hat information led to the search of 525 Wallis Avenue," and "included that [Defendant] was the likely Detroit source of supply for the drug

16

dealing that was occurring at 525 Wallis Avenue." (*Id.*).  In his testimony at the suppression hearing, TFO Patterson attributed such information to the confidential informant.  (Docket No. 69 at 11-12, 15).  In its brief in response to Defendant's Proposed Findings of Fact and Conclusions of Law, the Government reiterated its position that such information from the confidential informant was not a new argument, but was instead evidence in support of its previously raised probable cause/automobile exception argument.  (Docket No. 72 at 2).  Defendant, in turn, did not file any response to the Government's Proposed Findings of Fact and Conclusions of Law.

Upon consideration of the record and the parties' arguments, the Court finds that the Government did not waive its probable cause argument in relation to information received from the confidential informant, as Defendant contends.  Rather, at the suppression hearing, the Government properly introduced evidence in the form of testimony by TFO Patterson regarding information that was provided by the confidential informant in the preceding investigation of this matter.  Such evidence was offered in support of the probable cause/automobile exception argument that the Government had previously raised in response to Defendant's Motion to Suppress, in which Defendant argued that the agents did not have probable cause to search the vehicle.  Accordingly, the Court concludes that TFO Patterson's testimony regarding the information provided by the confidential informant is properly considered by the Court here, and that, while it is not necessary to support a finding of probable cause in this instance,[2] such evidence lends additional support to the Government's argument that, at the time of the vehicle search, the agents had probable cause to believe that the Nissan contained contraband or evidence of a crime.

Therefore, the Court finds that, even if Defendant did not abandon his expectation of

---

[2]  The Court finds, alternatively, that even without consideration of the information provided by the confidential informant, *see supra*, based on the remaining information known by the agents at the time of the search of the Nissan, probable cause existed to believe that contraband or evidence of a crime would be found therein.

privacy in the Nissan, the agents' search of the vehicle here was permissible under the automobile exception to the warrant requirement.  Accordingly, the Government has met its burden of showing that the search of the vehicle was reasonable, and Defendant's Motion to Suppress must be denied.

## IV.    CONCLUSION

For the reasons discussed herein, Defendant's Motion to Suppress Evidence, (Docket No. 49), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:    June 9, 2026

cc/ecf:  All counsel of record